LLOYD DOAN, A MINOR, BY WAYMAN H. DOAN, HIS FATHER AND NEXT FRIEND, APPELLEE, V. HAROLD HOPPE ET AL., APPELLANTS.

272 N. W. 763

FILED APRIL 23, 1937. No. 29935.

*Burkett, Wilson & Van Kirk,* for appellants.

*Baylor & Tou Velle* and *George Healey, contra.*

Heard before GOSS, C. J., ROSE, GOOD, DAY, PAINE and CARTER, JJ., and CLEMENTS, District Judge.

PAINE, J.

This is an action for injuries to a pedestrian who was hit by an automobile, and the jury returned a verdict of $2,000. Defendant appealed.

The defendant assigns as error the action of the trial court in overruling the motion of the defendant to return a verdict in his favor at the close of the evidence, said motion being based on the ground that there was insufficient evidence to sustain a verdict for the plaintiff, and that the evidence failed to establish an issue of negligence as a matter of law, for that the plaintiff was guilty of negligence contributing to his own injuries in a degree that was more than slight, and that the evidence established as a matter of law that the defendant was not guilty of gross negligence.

The accident occurred after 11:30 p. m., August 2, 1935, on O street in the city of Lincoln, between Seventeenth and Eighteenth streets. The plaintiff is Lloyd Doan, was 20 years of age at the time of the accident, but was of full

age at the time of the trial, and his father, Wayman H. Doan, is also named as plaintiff. The car was being driven by the defendant Harold Hoppe, aged about 21, the son of William F. Hoppe, the other defendant, who owned the automobile, which was a family car, being driven with the knowledge and consent of the father. The plaintiff was engaged in common labor, and had been assisting in trucking a load of household furniture during the evening, and was sitting on a davenport in the rear of a truck, which was parked at an angle on the south side of O street west of the middle of the block. His employer, Merle Allen, had crossed the street from the truck to a small hamburger stand, located on the north side of O street, and was standing there visiting with a friend, Frank Bonsor. Allen had called to the plaintiff to come across the street to get a little lunch, but was standing with his back to the street, and did not turn around until he heard the brakes go on. The plaintiff, when called, had started directly across in the middle of the block, and when he reached the middle of the street he said he looked both ways and saw the car coming from the east, and thought it was going about 40 miles an hour, but thought he could get across ahead of it safely.

The evidence shows that O street in the city of Lincoln runs east and west; that it is 70 feet wide from curb to curb, and entirely paved; that the hamburger stand is 14.1 feet across the front; that a used-car business immediately to the west of it is 36 feet 3 inches wide, with a driveway through the curb, which driveway is 11.8 feet wide; that in this block there were three electroliers on each side of the street.

The defendant testified that he was alone in the car, driving west on O street; that his car was equipped with four-wheel brakes, which were in good condition; that he was driving about 25 miles an hour, was looking ahead, and watching the street; that he did not see the plaintiff until he was about ten feet ahead of him and coming into the left side of the car; that plaintiff was running; that defend-

ant put on his brakes, tried to get out of plaintiff's way by turning the car toward the north, and that the car was going in a northwesterly direction on the north side of O street when it struck the plaintiff; that the defendant kept his brakes on all the time, applying the brakes so hard that the wheels may have skidded, and brought the car immediately to a stop in the driveway in front of the used-car place; that he got out of the car, helped put plaintiff in the car and took him to a hospital, and then went and got the plaintiff's father and mother and took them to the hospital, then took them home again that night, and visited the plaintiff at the hospital the next day. The plaintiff was struck about in front of the east side of the hamburger shop, and the car came to rest in the driveway in front of the used-car place of business next west of the hamburger shop. The plaintiff rolled 30 or 40 feet down the street after he was hit. There is considerable dispute as to how far the car ran after striking the plaintiff, but it is not difficult to arrive at the approximate distance that the car ran after the brakes were put on.

The captain of the traffic division of the Lincoln police department, and head of the brake-testing department, testified that he had taken a course of study at the Traffic Officers' Training School at Northwestern University, and had made and observed many tests to determine the distance within which an automobile equipped with four-wheel brakes could stop while traveling on such pavement at the various rates of speed, and gave it as his opinion that the shortest distance within which the average automobile so equipped could be stopped was as follows: Within 80 feet if traveling 40 miles an hour; within 61 feet if traveling 35 miles an hour; within 45 feet if traveling 30 miles an hour; within 31 feet if traveling 25 miles an hour; that these distances are based upon the assumption that the brakes are applied during the entire distance to the fullest extent and that the wheels of the automobile do not skid, for if the wheels of an automobile skid, then the distances would be greater, for the car will stop more quickly

if the brakes do not lock the wheels and cause them to slide. He testified that the speed limit allowed on the date and place of the accident was 25 miles an hour.

The plaintiff testified orally in the case at bar, and said he had only gone to school a very short time, and was only experienced in labor on farms and elsewhere. Also, additional evidence of plaintiff was taken by deposition at the Lincoln General Hospital, and was read to the jury.

One of the disputed points in the evidence is as to the speed of the defendant's car at the time of the accident. His testimony is that he was driving 25 miles an hour. Frank Bonsor judged the automobile to be running 35 to 40 miles an hour. Merle Allen, with his back to the street, did not turn around until he heard the brakes screeching, but judges the automobile was running from 30 to 40 miles an hour. Its speed may be judged somewhat by the distance it ran after striking the plaintiff. According to the defendant, the automobile did not travel over 31 feet after the brakes were applied. On the other hand, the plaintiff's evidence is that it traveled more than twice that far, the witnesses of the plaintiff claiming that the automobile ran up into the driveway and then backed down to where it finally stopped.

In *Peterson v. Millnitz,* 119 Neb. 365, 229 N. W. 12, which was decided in 1930, a middle-aged man who was walking diagonally across an intersection of public streets, where motor vehicles might be expected to approach from four directions at the same time, was struck by a Ford car, which was being driven at the rate of 10 to 12 miles an hour, and the driver had honked within 50 feet of this intersection, and it appeared that plaintiff jumped backward into the path of this car and was struck. This court held that the plaintiff in such a case cannot recover unless his negligence is shown to be slight in comparison with that of the defendant. This case was reversed because a prejudicial instruction was given.

Next we will discuss the case of *McDonald v. Omaha & C. B. Street R. Co.,* 128 Neb. 17, 257 N. W. 489, where a

young lady was injured by being knocked down by a street car, which she had stepped in front of when it was still in motion and within seven feet of her. It was held that her act in stepping directly in the path of such street car was the proximate cause of the accident. This court said: "If the evidence clearly shows that the plaintiff is guilty of more than slight negligence, which will defeat a recovery, it is proper to sustain a motion for an instructed verdict for the defendant." The trial court having given such an instructed verdict, it was affirmed in this court. In this case our comparative negligence statute, section 20-1151, Comp. St. 1929, was discussed, and it was stated that, where from the facts different minds might draw different conclusions, the question should be submitted to the jury, but, on the other hand, where the evidence shows beyond reasonable dispute that the plaintiff's negligence was more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant.

The defendant in the case at bar insists that he should have been given an instructed verdict, the same as was given in *Troup v. Porter,* 126 Neb. 93, 252 N. W. 611. What were the facts? Alexander C. Troup, district judge, of Omaha, was killed by being struck by a car at 8:20 a. m. as he was crossing the street. The automobile was going about 25 miles an hour, and it appeared that decedent was running to catch a street car and came out from between two parked cars and ran directly in front of the car which struck him. This court said: "It seems the evidence fairly establishes as a matter of law that the (negligence of the) decedent herein in stepping from between two parked automobiles directly in front of the defendant's car without looking is more than slight negligence in comparison with the negligence of the defendant and that the trial court was justified in discharging the jury and entering a judgment in favor of the defendant." The principle of law controlling in this case was announced as follows: "Where contributory negligence of plaintiffs' decedent was more

than slight when compared with the negligence of defendant, there can be no recovery."

We have examined the cases cited by plaintiff, including *Coburn v. Loetscher,* 123 Neb. 407, 243 N. W. 127, *Campbell v. Slater,* 127 Neb. 231, 254 N. W. 897, and *Anderson v. Lee,* 130 Neb. 258, 264 N. W. 666, but, the facts being so entirely different in those cases, we do not think they interfere with our holding in this case.

Complaint is made by plaintiff because defendant did not sound his horn, citing *Christoffersen v. Weir,* 110 Neb. 390, 193 N. W. 922, but in the case at bar the plaintiff, crossing the street near midnight, and against the ordinance forbidding crossing in the middle of the block, was running into the car the first time defendant saw him, and if the headlights would not warn plaintiff certainly a honk would not. All the defendant could do was to apply his brakes hard, which he did instantly.

In the case at bar the defendants discuss at length the effect of the violation of the law by the pedestrian. Section 1201, Traffic Ordinance No. 3357 of the city of Lincoln, pleaded in defendant's answer and offered in evidence, prohibits a pedestrian from crossing the street at any place other than a regular cross-walk, in the following language: "Section 1201. Pedestrians Jay-Walking. No pedestrian shall cross any street at a place other than a cross-walk, nor cross any street intersection diagonally."

There is also a statute, section 39-1148, Comp. St. Supp. 1935, a portion of which section reads as follows: "The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian crossing such highway within any clearly marked cross-walk. * * * Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, cross-walk or intersection shall yield the right of way to vehicles upon the highway." Therefore, in this jurisdiction pedestrians are forbidden by the ordinance of the city of Lincoln from crossing a street between intersections, and the statute requires them

to yield the right of way if they cross between such intersections.

The evidence in the case at bar does not show that there was any other car in the middle of the block at the time of the accident, and nothing to confuse the pedestrian. The plaintiff saw the defendant's car coming west on O street from the time it crossed Eighteenth street, for the headlights were burning, as required. The plaintiff, instead of stopping in the middle of the street, started to run to beat the automobile, while the testimony of the defendant is that he did not observe the plaintiff until he saw him running in from the south side within ten feet of the car.

In our opinion, the evidence would not sustain a finding that the defendant was guilty of gross negligence, but the evidence did establish beyond the point that reasonable minds differ, and as a matter of law, that plaintiff was guilty of negligence contributing to his own injuries, in a degree more than slight.

The judgment of the trial court is reversed and the action dismissed.

REVERSED AND DISMISSED.

ROSE, J., dissenting.

My view of the facts and the law is at variance with the opinion of the majority. Plaintiff was rightfully in the street before he attempted to cross it. The jury were at liberty to find from the circumstances that plaintiff would have crossed in safety except for the dangerous and unlawful speed of the car that struck and maimed him, as evidenced by the distance he was thrown and rolled along the street like a tumble-weed. It was reasonable for plaintiff to believe the approaching car was so far away as to permit him to cross on foot in safety and his negligence in attempting to do so was evidentially slight in comparison with the proper inference of gross negligence of the driver whose lawless speed was such as to make a collision unavoidable, though a lawful speed and reasonable care would have prevented the casualty. The issues of slight negligence and gross negligence were questions for the jury under the evidence and circumstances.