LLOYD DOAN, APPELLEE, V. HAROLD HOPPE ET AL., APPELLANTS.

277 N. W. 64

FILED JANUARY 7, 1938. No. 29935.

768

*Burkett, Wilson & Van Kirk*, for appellants.

*Baylor & Tou Velle* and *George Healey, contra.*

Heard before GOSS, C. J., ROSE, EBERLY, PAINE, CARTER and MESSMORE, JJ.

CARTER, J.

This is an action to recover for injuries sustained by a pedestrian when struck by defendant's automobile. The verdict of the jury was for the plaintiff in the amount of $2,000, for which judgment was entered. Defendant's motion for a new trial was overruled and defendant appeals.

A former opinion of this court appears at 132 Neb. 641,

272 N. W. 763. The case is again before us after a reargument. The facts are stated in the former opinion and will not be repeated in detail here.

The evidence shows that plaintiff was crossing O street in Lincoln in the middle of the block between Seventeenth and Eighteenth streets when the accident occurred. The defendant was driving west on O street when he struck plaintiff. There is sufficient evidence in the record, if believed, to sustain a finding by the jury that defendant drove his car at an excessive rate of speed.

In the charge to the jury the trial court stated the law, in part, to be as follows: "You are instructed that the statutes of Nebraska provide that the driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have. If, therefore, from a preponderance of the evidence, you find that the defendant Harold Hoppe, at the time and place in question, was driving an automobile at a speed which, under these instructions and the evidence, was unlawful, then you are instructed that he thereby forfeited any right of way, and that the defendants had no right of way over the plaintiff, Lloyd Doan."

The section of the statute upon which this instruction is based is as follows: "(a) When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right except as otherwise provided in section 18. The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder. (b) The driver of a vehicle approaching but not having entered an intersection shall yield the right of way to a vehicle within such intersection and turning therein to the left across the line of travel of such first mentioned vehicle, provided the driver of the vehicle turning left has given a plainly visible signal of intention to turn as required by section 16. The driver of any vehicle upon a highway within a business or residence district shall yield the right of way to a pedestrian

crossing such highway within any clearly marked crosswalk or any regular pedestrian crossing included in the prolongation of the lateral boundary line of the adjacent sidewalk at the end of a block, except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices. Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, crosswalk or intersection shall yield the right of way to vehicles upon the highway." Comp. St. Supp. 1935, sec. 39-1148.

It will be noted that the provision for the forfeiture of the right of way because of excessive speed appears only in subdivision (a) of the statute and by the use of the words "which he might otherwise have hereunder" is limited to that subdivision. Subdivision (a) applies only to vehicles approaching or entering intersections at approximately the same time and the legislature clearly intended by this provision to prevent one by the use of excessive and unlawful speed from acquiring a right of way he would not have had otherwise. It is a recognition by the legislature of the dangers growing out of a situation permitting one to race for a right of way at an intersection. But this statute can have no application where the accident occurred in the middle of a block as in the case at bar.

Plaintiff relies upon the case of *Logan v. Schjeldahl,* 66 N. Dak. 152, 262 N. W. 463, to sustain his contention that excessive and unlawful speed upon the part of the defendant Hoppe forfeits the right of way that he otherwise had over plaintiff under the statute. The statute involved was practically identical with ours. In that case the defendant drove down a highway at a speed found to be from 60 to 70 miles an hour and struck a car entering the highway from a private road. This situation was covered in the exception contained in subdivision (a), as it is in our statute also, by giving the driver on the highway the right of way over those approaching an intersection on a private road from either the right or the left. The North Dakota

court in effect said that the exception as it was written was in effect a part of subdivision (a) by reference and that the clause providing for a forfeiture of the right of way by the use of unlawful speed was applicable. The decision is not authority for plaintiff's contention that the instruction was properly given under the facts shown in the instant case. The provision relied on applies only to subdivision (a) of this statute, and no other. We necessarily conclude that the trial court's instruction hereinbefore quoted was improperly given and was prejudicial to the rights of the defendant.

Defendant contends, however, that the evidence is insufficient to sustain a judgment in any amount and that the action ought to be dismissed by this court.

It is not disputed that the statute gave the driver of the car a right of way over plaintiff at the place where the accident occurred. Comp. St. Supp. 1935, sec. 39-1148. The evidence also discloses that an ordinance of the city of Lincoln provides that no pedestrian shall cross any street at a place other than a crosswalk and provides a punishment for its violation. The first question to be considered is the degree of care placed upon one who "jaywalks" across a street contrary to the city ordinance. This court has held many times that the violation of a statute or an ordinance regulating traffic does not constitute negligence as a matter of law but is evidence of negligence to be considered by the jury in connection with other circumstances in evidence. The mere fact that a pedestrian walks across a street between intersections contrary to ordinance is not of itself negligence. But, one who does so must necessarily be required to exercise a greater degree of care than one who walks across a street at a crosswalk where protection is afforded by giving the pedestrian the right of way.

In the case of *Crowl v. West Coast Steel Co.*, 109 Wash. 426, 186 Pac. 866, the court in a case involving a similar situation said:

"This ordinance not only gives the right of way to

vehicles between intersections of streets, but practically denies to pedestrians the right to cross any street except at street intersections or places designated as crosswalks. A pedestrian, who crosses the street at a place other than at street intersections or crosswalks, does so in direct violation of the specific provisions of this ordinance. Manifestly, this ordinance was passed with the view of lessening, if possible, the number of injuries occurring in city streets, as the result of pedestrians being run over by automobiles. * * *

"Under the doctrine of these cases, and others which might be cited, it must be held that if the plaintiff, at the time of his injury, was crossing the street between intersections, he did so in violation of the ordinance we have quoted and was guilty of negligence as a matter of law. It would not, of course, necessarily follow from this that, in a case where the plaintiff admits violation of the ordinance, he should be nonsuited, because it would still be for the jury to determine certain other features, such as whether his negligence contributed to his injury, or whether the defendant saw or should have seen him in time to have avoided the injury. * * * To say the least of it, the court may say, as 'a matter of law, that where one is on the street in violation of the express provisions of an ordinance, reasonable care, under the circumstances, requires him to constantly observe."

We have come to the conclusion that one who crosses a street between intersections, contrary to the provisions of a city ordinance, is required to keep a constant lookout for his own safety, and if he fails to so do he is guilty of contributory negligence as a matter of law. This, of course, does not mean that it is a duty to look one way and continue so to look, but rather to look in the direction or directions of anticipated danger, and to continue to be alert to safeguard against injury.

In determining whether the negligence of the plaintiff was such as to bar a recovery, we are impressed with the rule stated in *White v. Davis*, 103 Cal. App. 531, 284 Pac.

1086, wherein the court said: "There seems to be a general rule running through the cases where a pedestrian, or one standing on a highway, is injured by an automobile, which usually determines whether the question of contributory negligence is one of law, or of fact. Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or in other words, when he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury." Applying such rule to the facts before us in the case at bar, we conclude that the case is one for the determination of a jury.

While the driver of an automobile across intersections where there are no traffic signals is charged with notice that a pedestrian has the right of way, and is required to accord such to the pedestrian, yet as between intersections the automobile has the right of way and the driver has a right to assume that pedestrians will observe this rule. He is not required to anticipate that a pedestrian will violate the rule. It must also be borne in mind, however, that a driver of a car, even though he has a right of way, and even though a pedestrian may be negligent, owes a duty to such pedestrian which has been expressed by this court in substance as follows: Where a driver of a car has the right of way, but the situation is such as to indicate to the mind of an ordinarily prudent person that to proceed would probably result in a collision, it is his duty to exercise ordinary care to prevent a collision. In other words, it then becomes his duty for his own safety, and that of others, to avoid an accident if reasonably possible. *Thrapp v. Meyers,* 114 Neb. 689, 209 N. W. 238; *Serratore v. Miller,* 130 Neb. 908, 267 N. W. 159.

After a reargument of the case, we think we erred in the former decision. It will therefore be set aside in so

far as it conflicts with this opinion. Because of errors of law in the instructions to the jury, the judgment is reversed and the cause is remanded to the district court for a new trial in accordance with the rules of law set forth in this opinion.

REVERSED.

ROSE, J., dissenting.

In my judgment the decision of the majority is the result of a radical departure from the law applicable to the issues and the evidence. As I read the opinion, it is at variance with a controlling city ordinance which takes the right of way from a motorist while driving at an unlawful speed in violation of traffic regulations.

The city of Lincoln owns the fee to the streets of Lincoln and it has power under its home rule charter to regulate traffic in its streets. In the exercise of that power the city by ordinance declared:

"Motor vehicles shall be driven at a rate of speed that is reasonable and proper having regard for the traffic and roadway and the condition of the street, and shall at all times be under the control of the driver."

The same section limits the speed to 25 miles an hour where plaintiff was injured by defendant and that rate even is unlawful unless it "is reasonable and proper having regard for the traffic and roadway and the condition of the street." In addition, the car "shall at all times be under the control of the driver." The same section of the ordinance provides:

"It shall be unlawful for any person to operate a motor vehicle at a greater rate of speed than herein set forth, or in violation of any of the provisions hereof."

Another section of the traffic ordinance provides:

"No vehicle shall be driven, used, operated, parked, or stopped in a careless, reckless, negligent manner, or in such a manner as to endanger life, limb, person or property, nor in such a manner as to endanger or interfere with the lawful traffic or use of the streets."

The evils against which the city ordinances are directed

are common knowledge communicated to the city council and to the courts by current history. In this country as many as 38,000 human beings are killed in a single year by misuse of motor vehicles. From the same cause in the same time, maimed and mutilated human bodies run into the hundreds of thousands. In the fast-moving carnival of death and mutilation the city of Lincoln has had its toll. Morgues are burdened with the dead, hospitals with the bleeding and mutilated and the alms houses with the paupers. Speed of motor vehicles driven by negligent, reckless or wanton drivers is known to be a prolific cause of the bloody work. The appalling situation called for legislation applicable to the city of Lincoln, an educational center where students pour into the streets by thousands, where commercial business attracts shoppers, where conventions and motion pictures attract throngs and where football games fill the public arteries of travel with automobiles and human beings.

The automobile brought into streets and highways an instrument for the destruction of human life and property hitherto unknown. The human organism of those who negligently drive automobiles in the streets is not adjusted to the destructive agency they undertake to guide and control. Evil consequences are augmented by the cunning and skill of modern engineers who have silenced the natural roar of fast revolving wheels until they no longer operate on human nerves or otherwise arouse the mind to the sense of danger produced by excessive speed and amazing power. It requires mental effort on the part of a driver, incased in steel for personal protection and otherwise surrounded by comforts, to obey the law and thus protect others from the destructive forces which the city ordinances require him to direct and control for public and private safety—an energy which, according to the evidence, defendant kept in repose.

In adopting the traffic regulations quoted, the city legislature had in mind calamities inflicted by means of motor vehicles unlawfully or negligently operated. The creation

of excuses to relieve motorists from responsibility for the consequence of their own lawless, reckless, negligent or wanton acts was never the aim of the city lawmakers. The majority opinion states: "There is sufficient evidence in the record, if believed, to sustain a finding by the jury that defendant drove his car at an excessive rate of speed." The violence of the impact and the surrounding circumstances in connection with oral testimony indicate a speed of at least 40 miles an hour. The instruction for which the judgment is reversed did not permit a recovery by plaintiff unless defendant drove at an unlawful speed. I did not discover any statute or ordinance requiring a pedestrian to yield the right of way to a lawless motorist going 40 miles an hour where the speed limit was not over 25 miles, where he was required to drive at a speed that was reasonable and proper, having regard for the traffic, where no motorist could lawfully drive in a "careless, reckless and negligent manner," where he could not lawfully drive "in such a manner as to endanger life, limb, person or property." The municipal law distinctly says it shall be unlawful to operate a motor vehicle at a greater rate of speed than that limited by the ordinance. This means that defendant had no right of way in the street when he struck plaintiff while going at the rate of more than 25 miles an hour and violating other traffic regulations. On sufficient evidence the jury found he exceeded the speed limit. He was therefore a public and private menace with no right of way in the street.

Plaintiff, a pedestrian without any means of locomotion except what nature provided, had little potential power to destroy lives or property of others in comparison with a speeding automobile. Owners of cars parked between intersections have the right to back them carefully into the lanes of travel. Policemen and firemen have a right to rush into the streets between intersections. If a driver drops dead at the wheel, a passenger in the car may stop it between intersections and with proper caution get out into the street for whatever is necessary. For numberless

purposes men may be lawfully in lanes of travel between intersections and motorists are under a duty in congested districts to observe what is ahead of them and stop or set their pace accordingly. When they perform this duty they see a man negligently in the street in front of them as well as persons and objects there without negligence.

By ordinance the city of Lincoln may lower the speed of automobiles in the streets and restrict other forms of negligence and lawlessness in city traffic to a greater reasonable extent than restrictions imposed by general acts of the legislature. The following was long recognized law:

"The fact that the legislature has provided limitations upon the speed of such vehicles will not prevent further restriction by the city if the same are reasonable and are made necessary by special conditions and circumstances that were plainly not considered by the legislature, and do not prohibit or restrict the free use of the streets." *Christensen v. Tate,* 87 Neb. 848, 853, 128 N. W. 622. See, also, *Bodkin v. State,* 132 Neb. 535, 272 N. W. 547.

The instruction condemned by the majority as erroneous and prejudicial to defendant states: "The statutes of Nebraska provide that the driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have." The reference to the immaterial statutes instead of the pertinent ordinances did not affect plaintiff's clear right of recovery or the measure of his damages. Except for the harmless reference, the instruction was correct. The reversal is a violation of the statutory and judicial rule that a judgment shall not be reversed for a mere harmless error in the instructions. The judgment should have been affirmed. The reversal is a denial of justice.

I am directed by Chief Justice Goss to say that he concurs in this dissent.