ALFRED R. WATTERS, APPELLEE, V. GEORGE MCPHERSON ET AL., APPELLANTS.

4 N. W. (2d) 605

FILED JUNE 19, 1942.   No. 31388.

*Kennedy, Holland, DeLacy & Svoboda,* for appellants.

*Wear, Boland & Nye, contra.*

Heard before ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

PAINE, J.

This is an action for personal injuries sustained by a pedestrian when struck by an automobile while crossing a street in Omaha. Judgment entered on verdict for $3,500. Defendants appeal.

The petition alleged that all parties are residents of Omaha; that defendant Baum Iron Company is a Nebraska corporation, and that George McPherson was an employee and acting for defendant Baum Iron Company.

It further alleged that on March 18, 1940, plaintiff, Alfred R. Watters, was walking from west to east across Sixteenth street, in front of 1430 North Sixteenth street, when a Studebaker sedan of the Baum Iron Company, and operated by George McPherson, defendant, struck the plaintiff and caused him to suffer severe and permanent injuries, which were the direct and proximate result of the negligence of defendants in the following particulars: In operating their automobile at a high, dangerous and excessive rate of speed, in excess of 40 miles an hour, in violation of a city ordinance and of the statutes of Nebraska; in failing to keep a proper lookout for pedestrians; in failing to have their automobile under proper control; in failing to sound the horn or give warning of their approach; in operating their automobile on the left and wrong side of the street; in failing to accord plaintiff the right of way across said street; in failing to seasonably apply their brakes and bring their automobile to a stop before colliding with plaintiff; in failing to divert the course of their automobile to have avoided a collision with plaintiff; in failing to use such means at their disposal to avoid injury to plaintiff when they saw, or in the exercise of ordinary care should have seen, plaintiff in a position of peril.

Plaintiff alleges that, as a result of the negligence of defendants, he received a fracture of the skull, fracture of the left zygoma, fractures of several ribs on the left side, severe bruises and contusions of the muscles, ligaments, tendons and nerves in the left shoulder, forearm and elbow, numerous lacerations, severe physical, mental and nervous shock, a severe concussion of the brain, resulting in an unconscious and semiconscious condition for six weeks following the injury. He alleges that he suffered dizziness, headaches, muscular incoordination, blurring of vision, shooting pains in the left forehead, pain in the chest, shoulder, elbow and ankle; that he was under the constant care of a physician and surgeon, was confined to his bed for many weeks, was under the care of special nurses for a long time, and became indebted for medical and nurse hire in the amount of approximately $150. Plaintiff claims that his injuries are permanent, and prays judgment against defendants in the sum of $15,000 and costs.

Defendants filed answer, admitting the corporate character of defendant Baum Iron Company and the employment of George McPherson by such company, and denying each and every other allegation in said petition. Defendants further state that any injuries sustained by plaintiff were the direct and proximate result of his own negligence in carelessly crossing Sixteenth street without keeping a proper lookout for cars coming from the north; in carelessly and negligently crossing at a place other than at an intersection; in negligently failing to accord defendant McPherson the right of way; in carelessly crossing through southbound traffic and crossing in front of defendant's car at a time when a collision was unavoidable; in carelessly and negligently failing to look towards the north after passing in front of south-bound traffic.

Plaintiff filed reply, denying each and every allegation of new matter contained in the answer, and denying specifically that he was negligent in any manner, but alleging that his injuries were the direct and proximate result of the negligence of defendants.

Trial was had to a jury, commencing on November 3, 1941, and on November 6 a verdict was returned, finding for the plaintiff and assessing the amount of his recovery at $3,500, and judgment was entered accordingly.

The defendants set out 26 assignments of error. Among these are the refusal of the court to sustain defendants' motion for a directed verdict, and the refusal to give 14 instructions offered by the defendants, and the giving of five instructions by the court on its own motion. It is charged that the verdict was excessive, and that it should have been set aside and a judgment entered for the defendants, because the judgment entered was not sustained by the evidence or the law. The propositions of law set out by the defendants will be discussed later.

Many facts in the case are not disputed. Plaintiff was 80 years of age, but a very lively man, as he testified, "There wasn't any grass ever growing under my feet when I was going." He was a licensed real estate agent, and said he walked down to his office and back every day, which was about two miles.

About 4:30 on the afternoon of March 18, 1940, he had left the office in the Brandeis Theatre building, Omaha, and walked to the Potato Market and got a tenderized ham, then walking north on Sixteenth street he started to cross to the east side in the middle of the block to go to White's Market, the street being 50 feet 3 inches wide, and the middle door of the market being 134 feet from the nearest intersection. While on the curb he stopped and looked north, and saw cars parked on both sides and a large railway express truck coming slowly on the west side of the street about 200 feet away, and so he had plenty of time and started east across the street at his usual gait, and got across the lane the express truck was coming on. He testified: "Q. Well, how long did you continue to look up to the north? A. Oh, just a little after I passed the truck until I got to the middle of the street. Q. Then what did you do? A. I looked south and straight ahead. Q. Now, when you looked down to the south did you see any cars coming from the south?

A. Yes, I saw a car coming from the south. Q. And where was that? A. Oh, it was a long ways down; I couldn't tell you how far it was. It was more than a block, I should think." While looking to the south, he heard no horn at all, and the next thing he knew was that night when he woke up in the hospital, badly injured.

Joseph Buick, who drove the railway express truck, said the box of it was six to eight feet wide, and extended up 2½ feet higher than the cab, which was above the motor. He was driving south on Sixteenth street, and the traffic is usually heavy around there after the Union Pacific shop lets out at 4:30 p. m. He saw plaintiff standing on the curb with a bundle under his arm, then he saw him step down and start across the street, and he slowed his truck down to about 15 miles an hour, and the plaintiff passed 40 or 50 feet in front of him. Then he said: "As soon as I passed by where he crossed, I heard brakes squeak and a little commotion, and then I looked through the rear vision mirror of the truck and I saw this man lying in the street." But he drove right on to the Missouri Pacific freight house.

George King, who had operated a used car business at 1502 North Sixteenth street as sales manager for six years, was subpœnaed as a witness by plaintiff, and testified that he was over on the east side of the street appraising a car at the time of the accident, and noticed two cars trying to pass the truck, and that the speed of defendants' Studebaker sedan, which hit the plaintiff, was 40 to 50 miles an hour. He heard the brakes squealing, and ran down to the place of the accident.

It appears that defendants' automobile, coming up fast from behind the express truck, attempted to go around the truck, and when the plaintiff was within a short distance of reaching the far curb he was struck by defendants' automobile.

Max V. Woodward, a policeman in the traffic bureau, said he received the call at 4:45 p. m., and went right out with sergeant Timmins. He stated he had taken the special traffic course of nine months at Northwestern University.

These officers took pictures and measurements. Sergeant Timmins had also taken traffic courses at Northwestern University at Evanston, Illinois, and has since given instruction to Omaha policemen and also at the University of Nebraska school for traffic law enforcement officers. The plaintiff was still lying there when they first arrived, and the blood spot in the picture identified the place. The skid marks made by defendants' car were about 60 feet in length. The pavement was dry, and the picture shows that the outside of the paving was asphalt with brick paving in and between the two street car lines.

Sergeant Timmins then testified: "A car leaving a skid mark of that length would indicate a speed of between thirty-six and thirty-seven miles an hour, a minimum." He then testified that, when a driver sees an emergency and takes his foot off the gas and applies the brake, the best average of the elapsed time is five-eighths of a second. He then testified: "An automobile travels one and a half times its speed in feet per second. In other words, if he is traveling thirty-six miles an hour, in one second he would travel fifty-four feet. In five-eighths of a second he would travel a fraction over thirty-four feet. In other words, the reaction time driving at thirty-six miles an hour, he travels a fraction over thirty-four feet in five-eighths of a second. Q. That thirty-four feet that he travels is the distance he travels before the brakes are applied, if I understand you correctly? A. That is right."

The plaintiff's body was thrown so high in the air that Lee Jagers, a meat cutter in White's Market, saw it up in the air. Plaintiff was struck by the middle of the bumper while he was crossing the east rail of the north-bound street car track.

In *Belville v. Bondesson*, 130 Neb. 926, 266 N. W. 901, the opinion sets out a case where a pedestrian was struck crossing this same Sixteenth street in Omaha, and, paraphrasing what we then said, it is necessary to formulate some idea as to what an ordinarily cautious and prudent man would do under like circumstances.

So, in the case at bar, the plaintiff would pause and look to the right and left, and if he saw no cars which would endanger him in reaching the center of the street he would proceed that far; he would then devote the greater part of his attention to cars coming in the traffic lanes he was about to cross, being alert at all times to the possibility that a car might come from a place not to be expected.

Now, in the case at bar, the defendants' car was out of sight behind the large express truck, and upon reaching the center of the street plaintiff saw a car coming from the south, and was proceding across cautiously, not thinking that defendants' car would dash out from behind the truck and, crossing the middle of the street, proceed down the street, where it had no right to be under all the circumstances, and run him down while it was going at an excessive rate of speed.

The defendants, on the other hand, insist that they had the right of way under the law as stated in the last sentence of section 39-1148, Comp. St. Supp. 1939: "Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, crosswalk or intersection shall yield the right of way to vehicles upon the highway."

In addition, defendants call our attention to the case of *Doan v. Hoppe*, 133 Neb. 767, 277 N. W. 64, in which the fourth paragraph of the syllabus is as follows: "The driver of an automobile having the right of way between street intersections is not required to anticipate that pedestrians will violate an ordinance prohibiting them from crossing a street at a point other than a crosswalk;" and further defendants argue that, "Where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight, as compared with the defendant's negligence, if any, then the trial court, on motion of the defendant, should either dismiss plaintiff's case or instruct the jury to return a verdict for the defendant."

But, in the fifth paragraph of the syllabus in *Doan v. Hoppe, supra,* we also said: "When the driver of the car

has the right of way but the situation is such as to indicate to the mind of an ordinarily prudent person that to proceed would probably result in injury to a pedestrian, it is his duty to exercise ordinary care to prevent the injury, even if the pedestrian may have been negligent."

In this *Hoppe* case there was a specific ordinance, being No. 3357, of the city of Lincoln, received in evidence, and which read as follows: "Section 1201. Pedestrians Jay-Walking. No pedestrian shall cross any street at a place other than a cross-walk, nor cross any street intersection diagonally."

However, no such ordinance of the city of Omaha having been introduced, we will take it that there is no ordinance prohibiting such crossing of a street.

The plaintiff in the case at bar had a right under the common law to cross the street between intersections, as he was doing. If there was any negligence whatever to be charged to the plaintiff, it was properly submitted to the jury in connection with all the other facts in the case.

In instruction No. 5 Judge Beal instructed the jury that, if the negligence of the plaintiff was more than slight, he could not recover, and then followed a long instruction on comparative negligence, ending with the sentence: "If, on such comparison, you find that the defendants have not been guilty of gross negligence, plaintiff cannot recover; also, if plaintiff has been guilty of negligence in a degree more than slight, he cannot recover; but, if the defendants have been guilty of gross negligence, and the plaintiff has been guilty of only slight negligence, the plaintiff is still entitled to recover, but his recovery shall be reduced in the proportion that his negligence bears to the entire negligence as shown by the evidence."

"In an action by a pedestrian against the owner of an automobile for personal injuries sustained when she was struck by such automobile as she attempted to cross the street in the middle of the block, where it appears that the automobile was more than half a block away when she first started across the street, and that she looked a second time,

and no other automobiles were in sight, and where the driver of such automobile saw such pedestrian and, by the exercise of due care in the control thereof, could have stopped in time to avoid striking her, *held,* that the question of the comparative negligence of the parties is one for the jury." *Lustgarten v. Harris,* 122 Neb. 663, 241 N. W. 114.

"A person has a right in the absence of prohibition by statute or ordinance to cross a street at any point, and is not limited to regular crossings. The driver of a truck owes to one crossing a street at a point other than a regular crossing the duty of reasonable or ordinary care under the circumstances and must exercise more care toward a child of tender years crossing between blocks than toward an adult in same circumstances." *Kauffman v. Fundaburg,* 123 Neb. 340, 242 N. W. 658.

"Pedestrian lawfully on highway may rely on reasonable care of automobile drivers, and is not negligent, as a matter of law, in failing to anticipate driver's negligence." *Cotten v. Stolley,* 124 Neb. 855, 248 N. W. 384.

In the recent case of *Nichols v. Havlat,* 140 Neb. 723, 1 N. W. (2d) 829, this court said: "Pedestrians have the right to use the public street at any time day or night, and, in the absence of applicable statute or ordinance limiting the same, have the right to walk longitudinally in a street or highway, and are not, as a matter of law, guilty of contributory negligence in so doing."

While these last two cases involved pedestrians walking down the highway instead of across it, yet we believe the principles there stated are applicable to the case at bar, as showing that a pedestrian legally in the street cannot be wantonly run down.

The defendants charge that the recovery in this case is excessive. But the evidence discloses that plaintiff had a fractured skull, a fractured left cheek bone, an injury to his left shoulder, injury to his left forearm, his left hand was skinned and split between the fingers. His left hip bone was injured. He suffered an injury to the ribs and to his back, to his left knee and left ankle, his right knee and his

right leg from the knee to the ankle, and a long, jagged laceration in his left forehead. He was in bed and in a chair for a couple of months. He had special nurses for six or seven weeks, suffered pain all the time, had pains in his chest, shoulder and head, suffered dizzy spells. The sidewalk would seem to come up and he would stumble and had difficulty in walking. The doctor was in constant attendance on him for seven or eight weeks. He did not have his clothes on until some time in June, and at the time of the trial, which was a year and eight months after the accident, he had not had a night without pain, and had not been able to go to his office or transact business. We have reached the conclusion that the verdict of $3,500 was fully warranted.

The court has examined all of the assignments of error, but, having discussed the ones deemed most important, cannot discuss the others without unduly lengthening this opinion.

When we review the facts, that a pedestrian in a long block crosses near the middle to shop at a store, and looks carefully to the direction from which traffic is coming, sees a slow-moving truck, but nothing else close by, and gets to the center of the street, looks carefully again for traffic, and is struck when nearly across the street by an automobile proceeding on the wrong side of the center of the street at an excessive rate of speed, which facts are properly submitted to the jury, under proper instructions, we have reached the conclusion that there is no reversible error in the record, and the judgment is

AFFIRMED.