CHARLES F. SAYERS, APPELLEE, V. WILLARD L. WITTE,
APPELLANT, IMPLEADED WITH COUNTY OF SAUNDERS,
APPELLEE.

107 N. W. 2d 676

Filed February 24, 1961. No. 34842.

*Marti, O'Gara, Dalton & Sheldon,* for appellant.

*Kanouff & Brown,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE,
YEAGER, WENKE, SPENCER, and BOSLAUGH, JJ.

MESSMORE, J.

This is an action at law brought in the district court
for Saunders County by Charles F. Sayers, plaintiff,
against Willard L. Witte, defendant, for personal in-
juries and property damage sustained by the plaintiff
by virtue of a collision between the automobiles operated
by the respective parties. The defendant, Willard L.
Witte, filed a cross-petition for property damage which
he alleged he sustained in said accident. The case was
tried to a jury, resulting in a verdict finding against
the plaintiff and against the defendant on his cross-
petition. The plaintiff filed a motion for new trial

which was sustained. The defendant perfected appeal to this court.

For convenience we will refer to the parties as plaintiff and defendant rather than by their names, and at times to the automobiles of the parties as the plaintiff's or defendant's car, as occasion requires.

The plaintiff's amended petition alleged that the accident was proximately caused by the negligence and recklessness of the defendant in the following particulars: In driving his automobile at a rate of speed greater than was reasonable and proper having regard for the traffic, use, and condition of the road; in failing to reduce his speed when approaching the crest of a hill so as to be able to stop within the assured clear distance ahead; in failing to keep a proper lookout; in failing to apply his brakes in time to avoid colliding with the plaintiff's automobile; and in failing to stop or turn his automobile so as to avoid colliding with the automobile of the plaintiff.

The defendant, for his answer and cross-petition, alleged that the collision, injuries, and damages resulting therefrom were proximately caused by the negligent and careless acts of the plaintiff in the following particulars: The plaintiff failed to have and keep his automobile under proper management and control; failed to keep a proper lookout for other automobiles, particularly the automobile of the defendant; failed to yield the right-of-way to the defendant; and failed to bring his automobile to a stop or change, alter, or to divert the course of the same in order to avert striking defendant's automobile when he saw or, in the exercise of ordinary care, should have seen defendant's approaching automobile.

The plaintiff, by answer to the defendant's cross-petition, denied generally the allegations contained therein, and in reply to the defendant's answer denied generally the allegations contained therein.

The defendant assigns as error that the trial court

erred in granting the plaintiff a new trial.

This accident happened about 6 p.m., on February 14, 1958, on a graveled road approximately 1 mile north and three-fourths of a mile east of the junction of State Highway No. 92 and U. S. Highway No. 30-A with State Spur No. 692, in Saunders County. The plaintiff was operating a 1956 Chevrolet automobile and the defendant, at the time of the accident, was operating a 1952 Pontiac automobile.

The plaintiff testified that he was a deputy sheriff of Saunders County; that on February 14, 1958, he was informed there had been an accident; and that he went to the scene of the accident, made an investigation, and started back to his home. He thought he should return to the point of the accident and put out some flares to avoid other accidents in that locale. He approached the Thorsen farm, pulled into the driveway immediately west of the Thorsen home, and stopped. His automobile was clear off of the road. He then looked to the east and to the west where he had an unobstructed view to the top of a hill to the west. He backed from the driveway onto the road, and kept looking until he thought his car was straightened out. He stopped, took the car out of reverse gear, put it into drive gear, and proceeded forward. When his car was straightened out it was on the south side of the road. As he started forward, he had proceeded approximately a couple of car lengths when his car was violently struck in the rear. He was thrown forward against the steering wheel, lost control of the car, and it stopped in the ditch on the north side of the road 25 or 30 feet from the east edge of the driveway. The plaintiff further testified that there was snow on the road, and gravel showed through the snow in places; that the weather was cold; that he had no difficulty in stopping his car and had stopped his car on the hill on his way to the previous accident; that while backing out of the driveway, the window on the driver's side was down;

and that when his car was struck it was on his side of the road, which was the south side.

On cross-examination the plaintiff testified that instead of going into the Thorsen yard and turning around, he backed his car onto the road; that as he backed the car he continued to look to the west, to the top of the hill; that he had an unobstructed view for 400 feet west of the point where the accident happened; that he did not see the defendant's car; that the defendant's car struck his car on the left rear bumper causing his car to slide sideways turning it into a northeasterly direction into the ditch; that he did not hear a horn and had no occasion to operate his horn; and that his car was equipped with snow tires.

The defendant testified that he was on his way home at the time of the accident and was traveling east on the county road running by the Thorsen place. When he came to the top of the hill, the plaintiff's car was parked in the driveway, standing still. As he proceeded down the hill, he saw that the back-up lights on the plaintiff's car were on, and the plaintiff proceeded to back out of the driveway in a southwesterly direction. At the point of the accident, the hill slopes to the east. He first saw the plaintiff's car from approximately the crest of the hill. He estimated that the plaintiff's car was approximately 100 yards from the crest of the hill. This witness further testified that at that time he did nothing, but when he saw the plaintiff's car starting to back onto the road, he blew his horn and continued to do so for some period of time. He applied his brakes which slowed the speed of his car, and continued to apply his brakes. The plaintiff's car proceeded out onto the road until it was approximately on the south side, pointing in a northeasterly direction, then there was the impact of the two cars. His car struck the left rear bumper of the plaintiff's car, and the plaintiff's car came in contact with the approximate center of the front end of the defendant's car. The defendant's car

was not going very fast at the time of the impact, and moved approximately one car length after the impact occurred. The plaintiff's car was pointing in a north-easterly direction when the defendant's car came into contact with it, and the plaintiff's car proceeded across the road into the ditch on the east side of the driveway. The road was elevated with the ditches graded out, and the ditches were 5 feet deep on each side of the road. He went to the plaintiff's car which was in the bottom of and resting against the north side of the ditch. The gravel on the road extended to the edge of the road and the ditches sloped away from the road. There was no substantial shoulder on the road. In addition to applying his brakes, he endeavored to steer his car as far as possible to the south shoulder of the road. The road was slick because it had snowed the day before and the snow had melted somewhat during the after-noon of the day of the accident, and then had frozen again. The road was packed with snow, with a slight glaze on top. The antifreeze drained from the radiator of his car where his car came to rest after the impact, approximately a car length east of the point of impact. The grade at that point was sloping down in an easterly direction. His automobile remained in the same position after the accident. When he went over to the plain-tiff's automobile, the plaintiff made a remark to the effect that "it's funny what some people do when they're in a hurry to get back to the accident—to do such a foolish thing—to back out on the road without seeing" an automobile approaching. The plaintiff denied mak-ing such a statement.

The defendant stated in a deposition that when he first saw the plaintiff's car, as he came to the top of the hill, it started to come out of the driveway, backing in a southwesterly direction; that the plaintiff's car had just barely started to move out of the driveway; and that the plaintiff's car was moving and not standing still.

The defendant testified on cross-examination that he

first applied his brakes 170 feet from the driveway; and that he blew his horn while he traveled a distance of 50 feet. On further cross-examination this witness testified that he applied his brakes approximately 300 feet from the point of the accident. The defendant did not give an estimate of the speed of his car at the time of the impact.

A witness testified that he had a conversation with the defendant on February 25, 1958, and the defendant told him that he was traveling east on the graveled road at a rate of speed of 45 or 50 miles an hour; and that when he first saw the plaintiff's car the front of it was about even with the north edge of the road where the driveway begins.

A trooper connected with the Nebraska Safety Patrol testified that he investigated the accident; that he received a call about 6 p.m.; that when he arrived at the place where the accident occurred he found two cars which were involved in the accident; and that the defendant's car was on the road and the plaintiff's car was in the ditch. The accident happened on a graveled road. The traveled part of this road was 22 feet in width, and the point where the accident happened was on the downgrade of a hill. There were glass and debris located approximately 10 feet north of the south side of the traveled portion of the road. With relation to the north edge of the traveled portion of the road, the debris was approximately 12 feet south of the north edge. He observed tracks made by the defendant's automobile. These tracks were along the south side of the road and extended about 13 steps from the defendant's automobile or an estimated distance of 32 feet. There was a track made to the west of the plaintiff's car to the point where that car was sitting when this witness arrived at the scene of the accident. This track was 20 feet to the edge of the road, and 22 feet on down into the ditch. The left portion of the defendant's car had been damaged. The left fender was pushed down on the

left wheel. This witness estimated the length of the plaintiff's car to be 16 or 17 feet, and the height approximately 5 feet.

An engineer made a plat of the area in which the accident occurred. Taking a point from the mailbox at approximately the west edge of the driveway in question to the highest point of the hill west would be 428 feet, and for roughly 9 feet it is almost level, then it starts sloping toward the west.

The sheriff of Saunders County testified that he talked to the defendant unofficially, after the accident, about the accident; and that the defendant told him that just as he "popped" over the hill he saw the back-up lights on the plaintiff's car go off.

At the close of the plaintiff's evidence and at the close of all of the evidence, the defendant moved for dismissal of the plaintiff's cause of action or in the alternative for a directed verdict, primarily for the reason that the evidence of the plaintiff established, as a matter of law, that he was guilty of contributory negligence which would bar recovery on his part. These motions were overruled.

The defendant concedes that the definition of gross negligence given by the trial court in instruction No. 6 is erroneous.

Section 25-1151, R. R. S. 1943, provides in part: "In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison, * * *."

The test this provides and requires is not based upon absolute degrees of negligence but rather upon a comparative test of the relative degrees of negligence between the parties. The negligence of the plaintiff or defendant is not to be evaluated as slight, gross, or

otherwise, standing alone. The criterion by which the degree of negligence is to be measured is the extent thereof by comparison with the negligence of defendant. The words "slight" and "gross" as employed in this statute are comparative terms and the requirement of them is that the negligence of the parties must be compared one with the other in determining an issue of slight and gross negligence. See Brackman v. Brackman, 169 Neb. 650, 100 N. W. 2d 774. See, also, Roby v. Auker, 151 Neb. 421, 37 N. W. 2d 799; Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N. W. 2d 250; Allen v. Kavanaugh, 160 Neb. 645, 71 N. W. 2d 119.

As stated in Roby v. Auker, *supra,* with reference to the comparative negligence rule: "The statute by the use of the words 'when the contributory negligence of the plaintiff was slight and the negligence of the defendant was gross in comparison' clearly intended the words 'in comparison' as qualifying both of the clauses immediately preceding. The words 'slight' and 'gross' as used in the statute are comparative terms and the intent of the statute is that the negligence of the parties shall be compared one with the other in determining questions of slight and gross negligence." See, also, Morrison v. Scotts Bluff County, 104 Neb. 254, 177 N. W. 158.

From the authorities above cited it will be observed that under the comparative negligence statute, section 25-1151, R. R. S. 1943, it is necessary that negligence of the plaintiff be compared with the negligence of the defendant to determine whether the negligence of one is slight or gross in comparison with the other.

"The question of the existence of negligence or contributory negligence is for a jury where different minds may reasonably draw different conclusions from the evidence as to the existence of negligence or contributory negligence." Hickman v. Parks Constr. Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040.

We conclude that the facts in the instant case present

conflicting evidence relating to the questions of negligence and contributory negligence, and are questions for the jury under proper instructions.

According to the plaintiff's testimony, the farmyard at the Thorsen place was covered with snow, except for the driveway. He looked to the east and to the west before backing onto the road, and continued to look to the west until headed almost due east. He testified that no car was in sight during that time. When he started his car forward, as previously shown in the testimony, the rear of his car was struck by the defendant's car. This presented questions for the jury to determine as to whether or not the plaintiff kept a proper lookout, and the degrees of negligence of the respective parties based upon the facts. If the defendant saw the back-up lights of the plaintiff's car go off as he "popped" over the hill, as testified to by the sheriff, or if the defendant, from the top of the hill some 400 feet to the west, saw the plaintiff's car moving as he testified, then there was a question to present to the jury as to whether or not the defendant was negligent in not having his car under proper control.

We conclude that the trial court committed prejudicial error in giving instruction No. 6, as contended for by the plaintiff. We affirm the judgment of the trial court in granting a new trial.

AFFIRMED.