BENJAMIN ALLEN REED, APPELLANT, v. METROPOLITAN
UTILITIES DISTRICT ET AL., APPELLEES.

115 N. W. 2d 453

Filed June 1, 1962. · No. 35129.

*Wear, Boland, Mullin & Walsh* and *Leonard A. Hammes,* for appellant.

*George C. Pardee, G. H. Seig,* and *Harry H. Foulks, Jr.,* for appellee Metropolitan Utilities Dist.

*Kennedy, Holland, DeLacy & Svoboda* and *Joe P. Cashen,* for appellee American Province of Servants of Mary Real Estate Corp.

Heard before SIMMONS, C. J., CARTER, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ., and CHADDERDON, District Judge.

SIMMONS, C. J.

This is an action to recover damages for serious personal injuries resulting from an explosion of combustible gas.

Plaintiff was an employee of the defendant, the American Province of the Servants of Mary Real Estate Corporation. The corporation will hereinafter be called St. Mary's. It is made a defendant because of subrogation rights under the Workmen's Compensation Act.

The Metropolitan Utilities District was the supplier of natural gas to St. Mary's. It is the principal and substantially the only defendant involved in the appeal. It will be called the defendant.

Plaintiff alleged several specific acts of negligence of the defendant. They will be set out herein, after a recital of the facts as they appear in the evidence.

At the close of plaintiff's case-in-chief, the trial court directed a verdict for the defendant. Plaintiff appeals from that order. We affirm the judgment of the trial court.

We discussed direct and circumstantial evidence in Bland v. Fox, 172 Neb. 662, 111 N. W. 2d 537. What we said there is applicable here.

St. Mary's operates a day high school for girls, a training school for sisters of its order, and has a considerable physical establishment.

In 1955 it built an addition to its existing building. The southeast rooms of the addition consisted, going from the south to the north, of three rooms. The first was a meter room. It was a small room variously described as to size but approximately 4 feet wide by 6 feet long and 10 feet high. It had a door and a louver window leading to the outside on the east. Its ceiling was a slab of concrete. In fact, it was a room in the corner of a larger room described as the water softener room. This room was 11 feet by 20 feet with a 16 foot ceiling. There were two water softeners in this room, which were not in operation at the time of the accident. It had a window on the south. It had a door leading to a hallway, stairs, and chapel on the west and a door leading to the boiler room on the north.

The boiler room was 25 feet by 33½ feet with a 16 foot ceiling. It had a double door and two windows (one a louver), to the outside on the east, and an inside door on the north leading to the auditorium and other parts of the building. There were two boilers and a hot water heater in the boiler room, all of which

were in operation on the morning of the accident on March 18, 1960. The gas to supply these boilers came from the meter room, across the water softener room, and into the boiler room near the ceiling. There were no gas outlets in the water softener room.

In constructing the heating and hot water systems, the plumber brought pipes through the top cement slab of the meter room ceiling and extended them downward a distance of 2 or 3 feet into the meter room. An open space of possibly one-half inch was left around these openings outside these pipes. The defendant brought its gas lines, installed its meters and made connection with St. Mary's heating system all within the meter room, and delivered its gas there.

The last time the defendant inspected its installations was during the first days of February 1960. Parenthetically, there is evidence of two trucks of defendant being on St. Mary's grounds the day before the accident. Their purpose in being there is not shown. We do not consider this evidence of any significance.

The plaintiff was in the water softener room 6 days before the accident. It does not appear that he found anything wrong at that time. He had a key to the meter room door and read the meter about 6 days before the accident.

The morning of March 18, 1960, was quite cold and stormy. Plaintiff came to the boiler room about 7 a.m., examined the boilers and water heater, determined that they were functioning properly, and left the room going out the north door that led to other parts of the building. Mass was being conducted in the chapel. Plaintiff was told that one of the sisters had detected the odor of gas. Whether that odor was in the chapel or elsewhere is not clear. The defendant was not notified.

Plaintiff turned, retraced his steps to the boiler room, entered it, and found nothing wrong. He then went to and entered the water softener room. He had taken two

steps when a terrific explosion occurred. The doors and windows were blown outward. The walls of the meter room were blown inward and rested upon the meters. The door into the water softener room was blown against the water heater with a considerable force. There was a "flash" fire in which plaintiff was seriously burned.

Plaintiff offered an expert witness who testified that to create such an explosion, there would have to be between 166 and 500 cubic feet of gas mixed with the air in the water softener room. He also testified that such a mixture would diffuse both horizontally and vertically and could have been ignited by the open flame of the hot water heater. There is no evidence that indicates the source of the gas or the length of time that it had been accumulating in the water softener room or of a diffusion time.

The day of and after the explosion, the defendant and the plumbing company tested all the installations of the plumbing company and no defects were found.

The same day, in order to restore service, the meters and connections of defendant were removed by the defendant and new ones installed. There is no evidence that the plaintiff or anyone inspected the physical equipment that the defendant removed, or sought to inspect it to discover whether or not it contained evidence that leakage in it occurred. The source of the gas that caused the explosion is a mystery, subject to whatever surmise and conjecure one may wish to make from the testimony herein above-recited.

Negligence is defined in this state: "Negligence is the omission to do something which a reasonable and prudent man, guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a reasonable, prudent man would not do; the want of that degree of care that an ordinarily prudent person would have exercised under

the same circumstances." Turnell v. Mahlin, 171 Neb. 513, 106 N. W. 2d 693.

Plaintiff argues here that: "When a gas company engages in the distribution of natural gas and the installation and inspection of its equipment, it is incumbent on such company to exercise the high degree of care and diligence required in the handling of a dangerous commodity, and, if negligent, it is liable therefor." Fonda v. Northwestern Public Service Co., 134 Neb. 430, 278 N. W. 836.

Assuming, but not deciding that the gas involved in this explosion came from a leakage of some sort in the meter room, the inevitable question comes, where was the leakage, what and who caused it, and, of course, the further inevitable question is, was the defendant negligent in the premises. This record furnishes no answer or suggested answer to any of these questions.

Plaintiff makes a series of allegations of negligence, but in argument blends them in such a way that it is a bit difficult to follow just which charge or charges of negligence he relies upon. Generally, they fall into the classification that defendant was negligent in its installations, in the maintenance and inspection of its installations, and that its work was done by inefficient employees.

Whether taken separately, or as a whole, the unavoidable question is what did the defendant do that it should not have done or what did it fail to do that it should have done that was the negligent proximate cause of this explosion. The plaintiff's evidence has no answer except those which rest upon the insufficient foundation of surmise, speculation, and conjecture.

To hold the defendant liable here, would be to hold that it was an insurer. Plaintiff's evidence does not sustain plaintiff's right of recovery. Disrobed of the garb in which plaintiff dresses his case, the naked unescapable fact is that he has failed to produce proof requisite to sustain his essential charges of negligence

of the defendant as the proximate cause of the accident. The judgment of the trial court is affirmed.

AFFIRMED.