UNITED STATES of America,
Appellant,

v.

Helen BOHACHEVSKY, Appellee.

UNITED STATES of America,
Appellant,

v.

Eugene BOHACHEVSKY, Appellee.

Nos. 17214, 17215.

United States Court of Appeals
Eighth Circuit.

Oct. 30, 1963.

Russell J. Blumenthal, Asst. U. S. Atty., Omaha, Neb., Theodore L. Richling, U. S. Atty., Omaha, Neb., on the brief, for appellant.

Lewis R. Leigh, Omaha, Neb., for appellees.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and YOUNG, District Judge.

BLACKMUN, Circuit Judge.

Helen Bohachevsky, age 56, was injured on November 16, 1959, when, as she was crossing an Omaha street, she was struck by an automobile owned by the government and driven by Walter Lundy of the United States Air Force. She and her husband instituted these actions against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). She sought damages for her personal injuries. He claimed damages for the medical expenses and for other items. The cases were consolidated for trial to the court sitting without a jury. Judgments were entered in Helen's favor for her injuries and in her husband's favor for the expenses. The government appeals.

It is conceded that at the time of the accident Airman Lundy was acting "within the scope of his * * * employment" as required by the Tort Claims Act. The parties agree, also, that the substantive law of Nebraska governs the tort aspects of the cases. There is no challenge to the amounts of the judgments.

The only issues before us, then, are whether the district court erred in holding (a) that Lundy was negligent and that his negligence was a proximate cause of the accident, and (b) that Helen was not contributorily negligent to a degree which, under the Nebraska contributory negligence statute, R.R.S.Nebraska 1943 § 25–1151, would bar a recovery.

The accident took place at the intersection of Railroad Street and Madison Avenue. Railroad has four lanes running north and south. Madison runs northwest and southeast. It thus intersects Railroad at an angle. It also has a jog to the south as it crosses Railroad so that its south curb west of the intersection is about on a line with its north curb east of Railroad. A marked crosswalk joins the sidewalks on Madison adjacent to these curbs.

The day of the accident was clear. The streets were unobstructed as to view. Helen, at about 3:30 P.M., had alighted from a bus on her way home from work. She crossed Railroad from the west to go to a grocery store on the east side of that street and near, but north, of the Madison intersection. She made her purchases there and recrossed Railroad to the west. When she had done so, she remembered that she had forgotten to buy fish. She started back to the store.

She testified, through an interpreter, that she then stopped at the west side of Railroad, looked north to her left and saw no car coming, and looked south to her right where she saw one car approaching, another in the distance a block away, and others in the far distance; that she started across the street, walking fast "because it was cold", on the north white line of the crosswalk; that she was hit by Lundy's car going north on Railroad; that he had given no warning; and that she was carrying her handbag, which contained her groceries, by the handle.

On cross-examination Helen testified that she was familiar with the intersection; that it was a busy one in late afternoon; that the car from her right passed in front of her; that when she started to cross "I was looking forward in front of me"; that as she was crossing "I looked just forward"; that she did not see the Lundy car "at the last moment of the

impact"; that she was past the center of the street when she was hit; that she was walking "pretty fast" but not running; that she was in a hurry to get to the store and back to fix supper; and that she was headed "directly to the store" but not to its door.

Lundy testified that the car he was driving was new and in good mechanical condition; that he had checked its brakes that morning; that he was a qualified driver; that at the time of the accident he was going north on Railroad on the inside lane at 25 to 30 miles per hour; that the speed limit there was 35; that he had his car under control and was watching his driving; that there were vehicles going north ahead of him "quite a ways up" and some behind him; that Helen "come across from behind" a southbound vehicle; that he first saw her when "I was right by the sidewalk"; that she was then 15 feet north of the north edge of the crosswalk; that she had her head down and a sack of groceries "in her arms" and "was looking down and straight ahead"; that he was about 25 feet from her when he first saw her; that he jammed on the brakes; that his left front fender struck her before he stopped and when he was going between 3 and 5 miles per hour; and that the car moved about 3 or 4 feet after the impact.

Lawrence R. Moore, a witness called by the government testified that he was driving approximately 70 feet behind Lundy at about 30 miles per hour; that he was neither gaining nor falling behind the air force vehicle; that he saw the plaintiff running across Railroad; that she was looking down at the street directly in front of her; that he did not see her look to the north or south; and that she was beyond the marked crosswalk and headed for the store. On cross-examination he stated that he saw no cars coming from the north to the south and that he watched Helen go all the way across the street.

The government's motions for dismissals made at the close of the plaintiffs' cases and again at the close of all the evidence were denied. The court decided the cases from the bench with oral findings and conclusions which, to the extent pertinent here, are set forth in the margin.[1]

1. The issue of Lundy's negligence. The parties respectively advance many of the general negligence principles which have been adopted by the Nebraska court. We necessarily recognize these. Thus, in a Nebraska negligence action the plaintiff has the burden of proof as to the existence of negligence and as to proximate cause. Sipprell v. Merner Motors, 164 Neb. 447, 82 N.W.2d 648, 653 (1957). "Negligence is never presumed, and cannot be inferred from the mere fact that an accident happened". Bixby v. Ayers, 139 Neb. 652, 298 N.W. 533, 539 (1941).

---

1. "I am persuaded, and we can start out with the premise, that this lady who was seriously injured, whether she was in the crosswalk or beyond it, doesn't seem to me to be too important because the driver of the Government vehicle states that he did see her, and whether she was walking fast or walking slowly, doesn't seem to be important under the circumstances here.
\* \* \*

"The Court finds that the driver of the Government vehicle in this instance either saw, or should have seen, the plaintiff in time to have avoided contact or impact with her, and that he was negligent in failing to bring his vehicle to a stop before making contact with the plaintiff. That is not to say that the driver was doing anything different than most of us do when we are driving cars these days,

and he is not to be condemned for what happened. It is just an inevitable result of automobiles and pedestrians trying to occupy the same place at the same time.

"The Court finds that the plaintiff was guilty of some degree of negligence but not more than slight in comparison with that of the defendant. To the extent that the plaintiff was guilty of negligence the award of damages wil be reduced.

"The Court finds generally in favor of the plaintiff and against the defendant.
\* \* \*

"Again I want to repeat that the Court's finding is in no respect or wise critical of the young man who was driving this motor vehicle at the time of the accident. It is one of those unfortunate things that I guess we have to live with."

"Negligence is the omission to do something which a reasonable man guided by those considerations which ordinarily regulate the conduct of human affairs, would do, or doing something which a prudent and reasonable man would not do". McGraw v. Chicago, R. I. & P. Ry., 59 Neb. 397, 81 N.W. 306 (1899) ; Reed v. Metropolitan Util. Dist., 173 Neb. 854, 115 N.W.2d 453, 456 (1962). " * * * [W]here one is confronted suddenly with an emergency and is required to act quickly, he is not necessarily negligent if he pursues a course which mature reflection or deliberate judgment might prove to be wrong". Belik v. Warsocki, 126 Neb. 560, 253 N.W. 689, 691 (1934) ; Andelt v. Seward County, 157 Neb. 527, 60 N.W.2d 604, 607 (1953). But if the situation is "one of his own making" and "brought on by his own actions and omissions", he is not relieved of his duty to the injured person by having created an emergency situation. Schwartz v. Hibdon, 174 Neb. 129, 116 N.W.2d 187, 192 (1962).

A Nebraska statute, R.R.S.1943 § 39–751,[2] fixes right-of-way responsibilities as between a vehicle operator and a pedestrian crossing a street within a business or residence district. Although the fact a pedestrian crosses a street at a point other than at the crosswalk is not of itself negligence sufficient to defeat a recovery, one doing so is charged with the exercise of a greater degree of care than one who crosses at the crosswalk. He must keep a constant lookout in all directions for his own safety. Trumbley v. Moore, 151 Neb. 780, 39 N.W.2d 613, 616 (1949) ; Jarosh v. Van Meter, 171 Neb. 61, 105 N.W.2d 531, 538–539, 82 A.L.R.2d 714 (1960). In a case where the plaintiff crossed a street at a point which was not a pedestrian crossing, the Nebraska court said:

"In the instant case the plaintiff, according to his own testimony, looked in both directions before he started across the street. After he started across, he says, he continued to look north but never again looked to the south. As he approached the center of the street, he should have looked to the south, particularly where it was the more likely source of danger. It was negligence of such a character as will bar a recovery as a matter of law." Carman v. Hartnett, 161 Neb. 576, 74 N.W.2d 352, 355 (1956).

Doan v. Hoppe, 133 Neb. 767, 277 N.W. 64, 66 (1938). Nevertheless, "It is, with exceptions not applicable to this case, negligence for a motorist to drive a motor vehicle on a public highway * * * in such manner that it cannot be stopped, or its course changed or varied in time to avoid a collision with an obstruction discernible within the range of his vision ahead. Nothing will excuse his failure to see what is plainly in sight." Armer v. Omaha & Council Bluffs St. Ry. Co., 151 Neb. 431, 37 N.W.2d 607, 612 (1949) ; Ricker v. Danner, 159 Neb. 675, 68 N.W. 2d 338, 344 (1955). Even where a motorist has the right of way but the situation is such as to indicate to the mind of an ordinarily prudent person that to proceed would probably result in injury to the pedestrian, it is his duty to exercise ordinary care to prevent the injury. Doan v. Hoppe, supra, p. 67 of 277 N.W.; Watters v. McPherson, 141 Neb. 607, 4 N.W.2d 605, 608 (1942).

The review we have made above of the evidence shows without contradiction that Lundy was driving the automo-

2. § 39–751, in the form which was in effect at the time of the accident, reads in part as follows:

" * * * The driver of any vehicle upon a highway within a business or residence district shall yield the right-of-way to a pedestrian crossing such highway within any clearly marked crosswalk * * * except at intersections where the movement of traffic is being regulated by traffic officers or traffic direction devices. Every pedestrian crossing a highway within a business or residence district at any point other than a pedestrian crossing, crosswalk or intersection shall yield the right-of-way to vehicles upon the highway."

The section was amended in a detail not pertinent here by Laws 1961, c. 184, § 29.

bile at a speed lower than the maximum limit; that the car was not mechanically defective; and that, nevertheless, Mrs. Bohachevsky was hit. Certainly there is no evidence to the contrary. Beyond this, however, the record also discloses, we think, only the common situation of conflicting testimony: conflict, if it is material at all, as to whether Helen was within the crosswalk or at least on the white strip marking its northerly edge, or whether she had wandered northward somewhat from it to proceed at an angle directly toward the grocery store entrance; conflict as to whether she was running or only walking fast; conflict as to whether she was carrying her groceries in her arms and thus was obstructing her view of traffic, or whether she had them in her handbag and was holding it by its handle; conflict as to whether she troubled to observe the traffic at all or proceeded doggedly to her destination oblivious of traffic peril; conflict as to how far Lundy was from Helen when he first saw her; conflict as to whether there was traffic from the north going south on Railroad; conflict as to whether she was apparent at all times to the driver of an automobile proceeding north on Railroad; and conflict as to whether she could have stepped out from behind a car so as to place herself suddenly in Lundy's path and thus confront him with an emergency situation.

We necessarily conclude, as a consequence of all this, that these conflicts present issues which would normally and properly have been resolved by a jury. Buie v. Beamsley, 171 Neb. 181, 105 N.W.2d 738 (1960); Wrona v. Schrawger, 171 Neb. 814, 108 N.W.2d 95 (1961). This is not a case where, as the government contends, the court's findings that Lundy was negligent and that that negli-

gence was a proximate cause of the injury were erroneous as a matter of law.

2. The issue of comparative negligence. The Nebraska statute, § 25-1151 [3] applies to the situation where the plaintiff is guilty of contributory negligence but it provides that that negligence does not bar recovery if it was "slight and the negligence of the defendant was gross in comparison". The district court found here that Helen "was guilty of some degree of negligence but not more than slight in comparison with that of the defendant".

The cases clearly establish that the standard thus statutorily established is comparison of the negligence of the respective parties. It is not one resting on absolute degrees. The negligence of one party is to be compared with that of the other; it is not to be evaluated standing alone. Morrison v. Scotts Bluff County, 104 Neb. 254, 177 N.W. 158 (1920); Roby v. Auker, 151 Neb. 421, 37 N.W.2d 799, 800–801 (1949); Brackman v. Brackman, 169 Neb. 650, 100 N.W.2d 774, 778–779 (1960); Sayers v. Witte, 171 Neb. 750, 107 N.W.2d 676, 680 (1961); Hiner v. Henson, 174 Neb. 725, 119 N.W.2d 288, 291 (1963); Union Pac. R. Co. v. Denver-Chicago Trucking Co., 202 F.2d 31, 35 (8 Cir. 1953). A failure in the instructions to require this comparison is error. Bezdek v. Patrick, 167 Neb. 754, 94 N.W.2d 482, 489 (1959).

The Nebraska court has held that the facts of a case may present, as a matter of law, more than comparative "slight" negligence on the part of the plaintiff or comparative "gross" negligence on the part of the defendant. Pierson v. Jensen, 150 Neb. 86, 33 N.W.2d 462, 466–467 (1948); Farag v. Weldon, 163 Neb. 544, 80 N.W.2d 568, 574 (1957); Hughes v.

3. § 25–1151.
"In all actions brought to recover damages for injuries to a person or to his property caused by the negligence of another, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery when the contributory negligence of the plaintiff was slight and the negligence of the defendant

was gross in comparison, but the contributory negligence of the plaintiff shall be considered by the jury in the mitigation of damages in proportion to the amount of contributory negligence attributable to the plaintiff; and all questions of negligence and contributory negligence shall be for the jury."

Omaha and Council Bluffs St. Ry., **143** Neb. 47, 8 N.W.2d 509, 511 (1943). This has been said to be the case where the plaintiff without warning moves from a place of safety into the path of an oncoming vehicle. Cuevas v. Yellow Cab & Baggage Co., 141 Neb. 662, 4 N.W.2d 790, 792–793 (1942); Gade v. Carlson, 154 Neb. 710, 48 N.W.2d 727, 730 (1951). There is then "no duty of making the comparison under the comparative negligence law imposed upon the jury". Troup v. Porter, 126 Neb. 93, 252 N.W. 611, 612 (1934). This is so despite the literal language of the last sentence of the statute that "all questions of negligence and contributory negligence shall be for the jury". Pinches v. Village of Dickens, 127 Neb. 239, 254 N.W. 877, 879 (1934).

The test as to whether the contributory negligence question is one of law is the expected one: " * * * [W]here different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury, but where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant." Whittaker v. Hanifin, 138 Neb. 18, 291 N.W. 723, 725 (1940); Sayers v. Witte, supra, p. 680 of 107 N.W.2d; Surface v. Safeway Stores, 169 F.2d 937, 939–940 (8 Cir. 1948); Continental Can Co. v. Horton, 250 F.2d 637, 644 (8 Cir. 1957).

With this as the governing standard, we readily conclude, under the facts here, that the contributory negligence which the court found to exist on the part of the plaintiff was not so absolute and was not of that comparative degree which, as a matter of law, would defeat her recovery. The statement made by the Nebraska court in Doan v. Hoppe, supra, p. 66 of 277 N.W., is pertinent:

"Where the injured party fails to look at all, or looks straight ahead without glancing to either side, or is in a position where he cannot see, or, in other words, when he takes no precaution at all for his own safety, it is usually a question for the court. Where he looks but does not see an approaching automobile, or, seeing one, erroneously misjudges its speed or distance, or for some other reason assumes he could avoid injury to himself, the question is usually one for the jury."

Here, Helen testified that she stopped before crossing Railroad Street; that she looked both north and south; that she saw no traffic approaching from her left; that from her right she saw one car coming, another in the distance, and others farther off; that she was walking in a normal manner; that the car from the right passed in front of her and she decided to cross, with the other car in the distance; that when she started to cross she was "looking forward in front of me"; that when she last saw the Lundy car it was a block away; and that she was walking forward on the white line. This testimony, which we must assume the district court believed, and which on this appeal we must accept, shows observance of the traffic by the plaintiff from the curb and, before crossing, a considered judgment that it was safe to cross, a wait for the nearest car from the south to pass, and a hasty crossing, obviously on the assumption that she could gain the east curb prior to the arrival of the Lundy car from the south. At most, this was misjudgment within the language quoted from Doan v. Hoppe, supra.

Both issues, therefore, were for the trier of fact and not to be resolved as matters of law. The result in each instance has adequate support in the record. The court's findings are not clearly erroneous within the meaning of Rule 52(a), F.R.Cv.P.

Affirmed.