**WESTERN CONTRACTING CORPORATION, a Corporation, Appellant,**

v.

**Gertrude (Trudie) M. ODLE, Administratrix of the Estate of Harold B. Odle, Paul Hardeman, Inc., and Employers of Wausau, Appellees.**

No. 17435.

United States Court of Appeals
Eighth Circuit.

April 23, 1964.

---

39

Patrick W. Healey, Lincoln, Neb. (George Healey, Lincoln, Neb., on the brief), for appellant.

Donald P. Lay, Omaha, Neb. (John P. Miller, Omaha, Neb., Payne Ratner, Jr., and R. R. Barnes, Wichita, Kan., on the brief), for appellee Gertrude Odle, Administratrix, etc.

No argument or brief was filed in behalf of appellees, Paul Hardeman, Inc., or Employers of Wausau.

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant Western Contracting Corporation (Western) has taken this timely appeal from a judgment entered against it upon a jury verdict rendered for the ·plaintiff as administratrix of the estate of Harold B. Odle, deceased, in an action for wrongful death of Mr. Odle. Western was the prime contractor with the Government for the construction of an Atlas Missile Site near York, Nebraska. Mr. Odle was employed by Paul Hardeman, Inc., (Hardeman), who had a separate contract with the Government to install and test the propellant loading systems.[1] Pursuant to the prime contract the Hardeman contract was assigned to Western and Hardeman occupied the status of a subcontractor.

On July 25, 1961, Harold Odle, while performing his duties in the fill and vent shaft at the missile site, met his death as the result of asphyxiation. The com-

---

1. Hardeman and its compensation insurer, Employers of Wausau, were both made parties in regard to subrogation for workmen's compensation benefits but are not involved in the issues on appeal.

plaint alleges that Western was negligent in failing to provide proper ventilation in the shaft and that such negligence proximately caused the accident.

Western by its answer denies negligence and asserts as affirmative defenses that Odle was guilty of contributory negligence more than slight and assumption of risk. Western by motion for directed verdict at the close of all the evidence and by motion for judgment n. o. v. asserted it was entitled to a directed verdict for one or more of the following reasons:

"1. That the evidence shows as a matter of law that the decedent, Harold Odle, was guilty of more than slight contributory negligence.

"2. That the record shows as a matter of law that the decedent, Harold Odle, assumed the risk of the accident which befell him by voluntarily exposing himself to danger which was apparent to him under the circumstances shown in the record.

"3. That the evidence fails to show negligence on the part of the defendant Western Contracting Corporation proximately contributing to the death of Harold B. Odle, deceased."

Such motions were overruled. Western on this appeal does not challenge the sufficiency of the evidence upon the issue of its negligence in failing to provide adequate ventilation. The appeal is based upon Western's assertion that the court committed error in refusing to sustain its motions for directed verdict and judgment n. o. v. upon grounds 1 and 2 just set out.

■■ The accident occurred in Nebraska. It is conceded that Nebraska law controls. The following principles of law govern the disposition of the issues raised by this appeal:

"A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion

is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." Caster v. Moeller, 176 Neb. 30, 125 N.W.2d 89, 91; Bland v. Fox, 172 Neb. 662, 111 N.W.2d 537, 539. See Continental Can Co. v. Horton, 8 Cir., 250 F.2d 637, 640.

■ Nebraska has a comparative negligence statute, R.R.S.1943 § 25–1151. In United States v. Bohachevsky, 8 Cir., 324 F.2d 120, 125, Judge Blackmun collects, cites and considers numerous Nebraska cases construing such statute, and states:

"The test as to whether the contributory negligence question is one of law is the expected one: ' * * * [W]here different minds may draw different conclusions from the evidence in regard to negligence, the question should be submitted to the jury, but where the evidence shows beyond reasonable dispute that the plaintiff's negligence is more than slight as compared with the defendant's negligence, then it is proper for the trial court to instruct the jury to return a verdict for the defendant.' Whittaker v. Hanifin, 138 Neb. 18, 291 N.W. 723, 725 (1940); Sayers v. Witte, supra, [171 Neb. 750, 107 N.W.2d 676] p. 680 of 107 N.W.2d; Surface v. Safeway Stores, 169 F.2d 937, 939–940 (8 Cir. 1948); Continental Can Co. v. Horton, 250 F.2d 637, 644 (8 Cir. 1957)."

■ The Nebraska court holds that the assumption of risk defense is applicable to negligence actions and that it is independent of the defense of contributory negligence. Chief Judge Johnsen in Surface v. Safeway Stores, 8 Cir., 169 F.2d 937, 942, summarizes the Nebraska law as follows:

"The Nebraska court has held that the doctrine of assumed risk is applicable to negligence actions in that state beyond the master and servant relationship, and that it is independ-

ent of the defense of contributory negligence, but that its operation is 'strictly limited to the terms' of the maxim 'volenti non fit injuria.' Landrum v. Roddy, 143 Neb. 934, 12 N.W.2d 82, 83, 149 A.L.R. 1041. In that case the court further said: 'The maxim "volenti non fit injuria" means: If one, knowing and comprehending the danger, voluntarily exposes himself to it, though not negligent in so doing, he is deemed to have assumed the risk and is precluded from a recovery for an injury resulting therefrom. The maxim is predicated upon the theory of knowledge and appreciation of the danger and voluntary assent thereto.' 12 N.W.2d at pages 84, 88."

To like effect, see Brackman v. Brackman, 169 Neb. 650, 100 N.W.2d 774.

We believe that Judge Van Pelt, the able Nebraska trial judge who heard this case, adequately answers Western's contention that it is entitled to a directed verdict by the following language appearing in his memorandum opinion overruling the motion for judgment n. o. v.:

> "The court gave its own charge on assumption of risk. The instruction said among other things:
>
> > " 'A person cannot disregard dangers that are open and obvious. It is for you to determine whether there were defects and dangers which were so open and obvious that decedent in the exercise of ordinary care and prudence would discover them.'
>
> The court then went on to point out certain statements claimed to have been made in the presence of the decedent calling to the jury's attention the right to determine from these and other facts and circumstances whether decedent acted as a reasonably prudent person, and exercised ordinary care for his own safety. The court then went on at length to point up the distinction between the assumption of risk and contributory negligence basing its charge upon

two cases—Landrum v. Roddy, 143 Neb. 934 [12 N.W.2d 82], decided in 1943, and Brackman v. Brackman, 169 Neb. 650 [100 N.W.2d 774], decided in 1960.

> "The court believes that it correctly set forth the distinction between the two defenses and in doing so specifically called attention to a matter that is made clear in both of the cases, namely, that for the doctrine of assumption of risk to apply it must be shown that the person knew, appreciated and deliberately exposed himself to the danger, the risk of which he is claimed to have assumed. The court's objection to requested instruction number 2 of the defendant went to the fact that it did not include a finding by a preponderance of the evidence that the defendant knew, appreciated and deliberately exposed himself to the danger, the risk of which it is claimed he assumed. Reading the charge as a whole the court believes that it has correctly set forth the Nebraska law on this subject and the jury were not in any manner misled.

> "This may be a good time to point out a matter which could have been mentioned earlier. Western's exception to this particular item in the charge and its argument that a verdict should have been directed are doubtless both based at least in part, if not entirely, upon Gamble v. Gamble, 171 Neb. 826 [108 N.W.2d 92]. That was a case where the hazard was obvious, namely, ice and sleet, and was as well known to the plaintiff as the defendant. The hazard was not the result of negligence on the part of the defendant. It therefore seems to this court that Landrum v. Roddy, supra, and many other cases in which it has been held that assumption of risk and contributory negligence are ordinarily questions for the jury are not overruled by Gamble."

Anderson v. Evans, 164 Neb. 599, 83 N.W.2d 59, was an action by an 18 year

old ranch hand to recover for injuries suffered when he poured fuel on a stake he had previously ignited. Defenses of assumption of risk and contributory negligence were asserted. Although the case was reversed and remanded for a new trial upon other grounds, the court held that the motions for directed verdict were properly overruled and with respect to assumption of risk stated:

"Also as said in Corley v. Hubbard, 129 Neb. 38, 260 N.W. 551: 'An employee assumes risks not ordinarily incident to his employment, provided he knows of them and appreciates the danger, or provided they are so plainly observable that he must be presumed to know them and to appreciate the danger.' See, also, Groat v. Clausen [139 Neb. 689, 298 N.W. 563], supra.

"Where however there is a disputed question of fact as to whether or not the employee was informed or had knowledge of the latent dangers of his employment a question is presented for determination by a jury." 83 N.W.2d 59, 66. See Baty v. Wolff, 162 Neb. 1, 74 N.W.2d 913, 917.

This court recently reached a similar conclusion on assumption of risk defense based on Iowa Law. S. & L. Co. of Des Moines v. Wood, 8 Cir., 323 F.2d 322, 328. Among other things, we there said:

"The defense of assumption of risk applies only where there is knowledge and full appreciation of danger. Westborough Country Club v. Palmer, 204 F.2d 143 (8 Cir., 1953)."

 When the applicable Nebraska law is applied to the facts of this case, we are satisfied that Western has not demonstrated that it is entitled to a directed verdict upon either the basis of contributory negligence or assumption of risk. We shall summarize the pertinent facts of this case, mindful of the rule that the evidence must be viewed in the light most favorable to the plaintiff.

We start out with Western's concession for the purpose of this appeal that it was negligent in failing to perform its contractual duty to provide adequate ventilation in the fill and vent shaft which it had built. Western's contract with respect to its obligation to provide ventilation states:

"A ventilation system shall be provided for all shafts which will furnish a minimum of 25 cfm (cubic feet per minute) of fresh air per man working in the confines of such operations. The distribution of fresh air shall be made from the bottom of the shaft in such manner as to assure adequate circulation for the workmen and reduce the hazards of accumulating dust and gas."

Pursuant to such provision, Western installed a large ventilating fan at the bottom of the shaft. Although the adequacy of such installation was questioned, Western's superintendent at all times took the position that the fan was adequate. He did agree, however, to install some ducts and an air sack.

The fill and vent shaft is a square shaft 60 feet deep and 6 feet square. Sixteen inch ladders and 2 platforms which divide the journey downward into approximate thirds are installed in the shaft. The shaft contains piping for carrying nitrogen for the missile fuel system to the adjacent missile silo. At the time of the accident, Hardeman had installed the piping and was in the process of testing it and eliminating leaks.

Mr. Odle was general foreman of Hardeman at the site. Mr. Hazell, Hardeman's superintendent was also at the job site. Mr. Rochelle, Western's superintendent, had charge of the performance of Western's contract including the ventilation shafts. John Van Steenberg, consultant to the Corps of Engineers, was test director on the project and was responsible for co-ordinating all testing activities. Mr. Nelson of the Corps of Engineers was safety director. Nelson, Van Steenberg and Rochelle had authority to stop the work for safety reasons.

Mr. Odle was not an engineer. He had a high school education with some train-

ing in construction work and plumbing. He was 29 years of age and had worked up to foreman in two years.

On Friday afternoon prior to the fatal accident, which occurred on Tuesday, Van Steenberg stopped work on the fill and vent shaft and informed Odle that such stoppage was based upon doubt as to the availability of good air. When nitrogen escapes it will displace the oxygen necessary for breathing unless there is adequate ventilation. Van Steenberg had on that occasion climbed down to the second landing and used a cigarette lighter to determine the sufficiency of the oxygen. When the lighter failed to light he promptly climbed out of the shaft without injury. Thereupon the testing ceased and the nitrogen was shut off and such condition continued for the next three days. Upon the day of the accident, both Nelson and Van Steenberg were of the opinion that work in the shaft could be resumed. The nitrogen was turned on and the pressure in the piping was raised to one and one-quarter times the normal operating pressure. A gauge was used and such pressure was held for five minutes to determine if there was an integral system without audible or visible leaks. None appeared and the pressure was then lowered to normal working pressure. In the case of a large leak, a visible foggy mist would be created. Such leaks would also be indicated by the gauges.

After the foregoing safety precautions were successfully completed, the next step was to enter the shaft to apply a leak solution to check for minor leaks which show up similar to a soap bubble. Nelson met Van Steenberg in the silo adjacent to the fill and vent shaft and the latter told the former the anticipated plans for continuing the testing. They then informed Odle of the plans and asked if they were the same as Odle's and he agreed. It was decided that Van Steenberg would stay in the silo and that Nelson would go with Odle into the shaft. Hazell was also to go into the shaft. Questions as to safety precautions and the atmosphere in the shaft were discussed. Odle indicated that he believed the atmosphere was satisfactory and made the decision to go down first, to which no one dissented. Both Nelson and Van Steenberg, who were experienced in this field and had authority to prevent anyone from descending the shaft acquiesced in, if they did not encourage, the resumption of the testing.

Nelson directed Odle not to go down without a miner's lamp which is designed to test low oxygen content. Odle and his immediate superior Hazell went to the tool shed to fill and adjust a miner's lamp. Western emphasizes testimony that Hazell and Odle, particularly Hazell, protested about using a miner's lamp. Nevertheless, the miner's lamp was used when the descent was made.

Nelson, who was to follow Odle down the shaft, had with him a "Lif-o-gen" bottle of oxygen. He testified that he had never carried an oxygen pack into the shaft before and that he did not believe that anyone else had done so. He considered the pack as a secondary or added precaution and if oxygen was needed at the bottom of the shaft, it could be shared. Van Steenberg testified that the Lif-o-gen bottles were almost valueless when someone is climbing since the masks take too long to set up and require the use of two hands. Subsequently, the Lif-o-gen bottles have been replaced for another type of apparatus.

No safety lines were used. Hazell testified that safety lines had not been used prior to the accident. Van Steenberg testified that there was no requirement by the Government or anyone else prior to the accident that safety lines be used.

Prior to the descent, Nelson checked the pressure to see if it was holding. Odle asked Nelson, "Do you hear the fan running?" Nelson replied affirmatively. Thereupon Odle took the miner's lamp and descended to the first landing which involved a descent of about 15 to 20 feet. Odle set down some tools, looked at his miner's lamp, took out his cigarette lighter and tried it, then dropped the lamp and started up the ladder and

44

got up two to four rungs before he fell backwards and, missing both landings, fell to the bottom of the shaft.

A Western employee dropped an oxygen torch with the gas turned on down the shaft, grabbed another oxygen bottle, went down the shaft and got within a few feet of Odle before he too was asphyxiated. A second employee attempting to descend was also overcome. A third employee entered the shaft with his personal aqualung. The rescuers were alive when removed; Odle was dead when reached.

Much of the evidence is pertinent upon each of the issues here in controversy. Such evidence does not compel a determination as a matter of law that Odle was guilty of contributory negligence more than slight or that he voluntarily assumed the risk. Before Odle descended the shaft, available safety tests were made supervised by the parties in charge of the safety program. Van Steenberg, who had closed down the work on Friday, approved its resumption. Rochelle had at all times claimed that the fan provided adequate ventilation. A reasonable basis exists for Odle to believe that the experienced personnel in charge of safety had performed their duties properly and were warranted in reaching the decision made, that it was safe to resume work in the shaft. Odle personally checked the shaft and made certain that the fan was running. He took with him his miner's lamp as directed. Van Steenberg, without any special equipment, had on Friday gone down further in the shaft and returned safely. Odle, when he fell, was trying to climb back to the surface. The evidence indicates that the lack of oxygen creates asphyxiation very rapidly.

Upon the basis of such evidence, we are satisfied that reasonable men could differ on the resolution of the contributory negligence and assumption of risk issues. Western has failed to establish that it was entitled to a directed verdict upon any of the grounds it urged.

Affirmed.